**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SAMUEL R. JOHNSON, | No. CV-09-600-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Pending before the Court is Plaintiff Samuel R. Johnson's appeal of the Social Security Administration's (the "Administration") decision to deny benefits. (Dkt. # 18.) For the following reasons, the Court affirms the decision.

## BACKGROUND

Plaintiff applied for disability insurance benefits on July 3, 1991, and he was initially found disabled as of December 9, 1991, due to several impairments that met the criteria of Listing 12.05(C), 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 69.) These listed impairments included mental retardation, a personality disorder, and severe substance addiction disorder. (*Id.*) In 1998, Plaintiff began working as a part-time van driver, which the Administration

1 determined constituted a trial work period, extending Plaintiff's benefits through June 2002.[1]
2 (R. at 52–53, 56.) On June 25, 2002, a routine disability review determined that Plaintiff
3 continued to be disabled because he had not medically improved. (R. at 50.)

From 2002 through May 2006, Plaintiff continued working as a van driver. (R. at 167.) On February 25, 2005, however, the Administration determined that, based on Plaintiff's earnings and work activity, his entitlement to disability benefits ended as of November 2002. (R. at 55, 87.) Plaintiff did not appeal that decision, and he continued working until May 25, 2006.

At that point, Plaintiff requested expedited reinstatement of his disability benefits and attached a new disability application, alleging a disability onset date of May 25, 2006 due to "diabetes, poor eyesight, and neuropathy in both legs." (R. at 104–09.) On March 27, 2007, the Administration denied Plaintiff's May 2006 application and issued a Notice of Disability Cessation, concluding that Plaintiff's disability had ended as of June 2002. (R. at 80–81.) Although the Administration's June 25, 2002 review had determined that Plaintiff's disability continued, the March 27, 2007 Notice of Disability Cessation revisited that decision and concluded that Plaintiff obtained previous disability benefits through fraud; because of this, the Administration determined that Plaintiff's entitlement ceased in June 2002.[2] (*Id.*)

Administrative Law Judge John W. Wojciechowski ("ALJ") held a hearing on June 9, 2008 (R. at 473–514). On August 20, 2008, the ALJ issued an unfavorable decision. After an exhaustive review of the evidence of both past and current alleged disabilities, the ALJ found that "fraud exists in this case," concluded that Plaintiff was not disabled as of

---

[1] A trial work period is "a period during which [a claimant] may test [his or her] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). An extended period of eligibility, also called a reentitlement period, is "an additional period after 9 months of trial work during which [the claimant] may continue to test [his or her] ability to work." *Id.* § 404.1592a(a).

[2] The Administration may reopen a decision if it was "obtained by fraud or similar fault." 20 C.F.R. § 404.988.

June 2002, and denied expedited reinstatement of benefits. (R. at 13–28.) The ALJ apparently made two main findings. First, the ALJ found that Plaintiff had not been disabled since June 2002 because Plaintiff had obtained his benefits by fraud. (R. at 16–23.) Specifically, the ALJ found numerous inconsistencies in the record demonstrating that Plaintiff was untruthful in his applications and in medical examinations in an attempt to secure benefits. (*Id.*) The ALJ also found that, at any rate, Plaintiff was no longer disabled as of May 25, 2006 because he had experienced medical improvement and regained the residual functional capacity to perform light work. (R. at 23.) In making this decision, the ALJ analyzed the expedited reinstatement requirements found in 20 C.F.R. § 404.1592b, which included consideration of whether Plaintiff was disabled under the eight-step test outlined in 20 C.F.R. § 404.1594(f) and whether Plaintiff had obtained benefits by fraud under 20 C.F.R. § 404.1594(e). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (R. at 4–6.) This appeal ensued.

## STANDARD OF REVIEW

A reviewing federal court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may "set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

The Court may not "substitute [its] own judgment for that of the ALJ." *Id.* The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). At the same time, the Court "must consider the entire record as a whole and

may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). The Court also may not "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the fundamental rule of administrative law that a reviewing court "must judge the propriety of [administrative] action solely by the grounds invoked by the agency" and stating that if "those grounds are inadequate or improper, the court is powerless to affirm the administrative action").

## DISCUSSION

The ALJ analyzed Plaintiff's claim as a request for expedited reinstatement, concluding that Plaintiff was not disabled as of June 2002 or as of 2006, by applying the overall framework outlined in 20 C.F.R. Sections 404.1592b and 404.1594. Plaintiff does not dispute the ALJ's overall legal framework, but instead only challenges specific findings and analysis within this legal framework. Therefore, the Court considers whether Plaintiff is entitled to benefits under 20 C.F.R. Sections 404.1592b and 404.1594.

The ALJ outlined the expedited reinstatement requirements. First, the claimant must have "stop[ped] doing substantial gainful activity within [sixty] months of [his or her] prior termination." 20 C.F.R. § 404.1592b. Second, the claimant "must not be able to do substantial gainful activity because of [his or her] medical condition." *Id.* Third, the claimant's "current impairment must be the same as or related to [the] prior impairment." *Id.* Fourth, the claimant "must be disabled[,]" and to determine whether the claimant is disabled, the Administration examines the medical improvement review standard of 20 C.F.R. § 404.1594. *Id.*

Plaintiff fails at least two prongs of this test. First, Plaintiff's current impairment is not the same as or related to the prior impairment. The ALJ explained that Plaintiff's prior "medically determinable impairments" included "mental retardation and a personality disorder[,]" which were found in List 12.05(C). (R. at 16.) Conversely, when Plaintiff reapplied for benefits as of May 2006, Plaintiff claimed disability based on diabetes, vision

problems, and neuropathy in his legs. (R. at 80–81, 107.) Likewise, as of June 2002, the ALJ found that Plaintiff's medically determinable impairments included only "diabetes mellitus with neuropathy[,]" as opposed to "mental retardation and a personality disorder." (R. at 17–18.) It is not apparent, and Plaintiff does not appear to argue, that his initial impairments were the same as or related to his latter alleged impairments. Furthermore, even though Plaintiff does not list mental impairment as a disability in his application, the ALJ noted that Plaintiff's IQ scores improved such that he would no longer qualify as mentally impaired under Listing 12.05(C).

Plaintiff also fails the final prong because substantial evidence supported the ALJ's finding that Plaintiff was not disabled. To determine if a person seeking expedited reinstatement is disabled, the ALJ applies eight sequential steps. *See* 20 C.F.R. § 404.1592b (citing 20 C.F.R. § 404.1594(f) (listing the eight steps)).[3] The ALJ explained that, under the eight-step process, a claimant's fraud can cause a finding that the claimant is not disabled.[4]

---

[3] First, the claimant must not be "engaging in substantial gainful activity." 20 C.F.R. § 1594(f)(1). Second, if the claimant has "an impairment or combination of impairments which meets or equals the severity of a [listed impairment][,]" then his or her "disability will be found to continue." *Id.* § 1594(f)(2). Third, if the claimant does not have a listed impairment, the ALJ determines whether there has been "medical improvement . . . as shown by a decrease in medical severity." *Id.* § 1594(f)(3). Fourth, if there has been medical improvement, the ALJ determines "whether it is related to [the] ability to work." *Id.* § 1594(f)(4). Fifth, however, if there was no medical improvement or if the medical improvement was unrelated to the claimant's ability to work, then the ALJ considers whether any exceptions apply. *Id.* § 1594(f)(5). One such exception deals with fraud. *Id.* § 1594(e)(1). Sixth, if the claim may continue even after considering the exceptions, then the ALJ determines "whether all [the] current impairments in combination are severe." *Id.* § 1594(f)(6). Seventh, if the impairments are severe, the ALJ "assess[es] [the claimant's] current ability to do substantial gainful activity" by determining "whether [the claimant] can still do work [he or she] [has] done in the past. If [the claimant] can do such work, disability will be found to have ended." *Id.* § 1594(f)(7). Eighth, even if the claimant is not able to do past work, the ALJ, considering the claimant's "age, education and past work experience" determines whether the claimant "can . . . do other work." *Id.* § 1594(f)(8).

[4] Again, Plaintiff does not dispute the legal framework that the ALJ adopted, i.e. that fraud can serve as a basis for the denial of benefits in certain circumstances. Rather, Plaintiff contends (1) that he did not commit fraud and (2) that fraud in 2002 is irrelevant because he

"If [the Administration] find[s] that any prior favorable determination or decision was obtained by fraud, [the Administration] may find that [the claimant] is not disabled." 20 C.F.R. § 404.1594(e)(1). In such a case, "the decision will be made without a determination that [the claimant] ha[s] medically improved or can engage in substantial gainful activity." *Id.* § 404.1594(e). Moreover, the fraud analysis "may be considered at any point" in the eight-step process. *Id.* § 404.1594(f)(6).

Again, Plaintiff does not dispute the legal framework that the ALJ adopted, i.e. that fraud can serve as a basis for the denial of benefits in certain circumstances. Rather, Plaintiff contends only (1) that fraud in 2002 is irrelevant because he seeks benefits as of 2006 and (2) that, in any event, he did not commit fraud. Contrary to Plaintiff's assertion, fraud is relevant because 20 C.F.R. § 404.1594(e)(1) explicitly states that the Administration "may find that [the claimant] is not disabled" upon a finding of fraud. Moreover, the ALJ was able to consider fraud and thus find Plaintiff not disabled "at any point" in the process. *Id.* § 404.1594(f)(6). Plaintiff points to no legal authority holding that fraud is irrelevant in a situation such as this.

In addition, substantial evidence of both past and present fraud exists in this case, namely because of the numerous inconsistencies in the record. For example, while Dr. Salk and Dr. Van Eerd found substantial mental limitations, reports show that Plaintiff's IQ scores improved over time to the point where Plaintiff no longer suffered substantial mental limitations. Plaintiff contends an organic explanation for this improvement exists, namely changes in drug and alcohol use and in medication dosages, but the ALJ could find to the contrary for several reasons. The ALJ explained that Plaintiff's IQ lower scores may have been caused by alcohol use, and not by any medical mental limitation. His improved scores, therefore, could indicate not only actual improvement in mental ability, but also a generally functioning IQ when unhampered by alcohol.

---

seeks benefits as of 2006.

Similarly, even though Plaintiff appeared disheveled, malodorous, and drowsy, exhibiting slurred speech and poor eye contact during some examinations, Plaintiff was observed at other times in a well-kept and lucid condition. In particular, the methadone clinic indicated that Plaintiff was lucid, mentally-sound, confident, and capable of holding a full-time job. Plaintiff's employer likewise described Plaintiff as dependable employee, even though the vocational expert opined that an individual with mental retardation normally would not be able to hold such a job. Moreover, far from appearing disheveled, the ALJ explained that an investigative report revealed that Plaintiff went in public while well-groomed with clean clothes.

As a part of Plaintiff's current claim of disability, he also alleged that he could not walk well, needed "help" when using the toilet, no longer drove, and used a cane and glasses. Yet, the investigative report and other physician visits revealed that Plaintiff could walk unassisted down stairs carrying a trash container, walk while carrying his cane, drive his daughter to school and back without glasses and without getting lost, and function without any balance problems. The ALJ also explained that, contrary to Plaintiff's assertions, Plaintiff could care for his daughter, perform household chores, manage finances, and maintain a happy and relaxed mood.

In addition, Plaintiff alleged severe diabetes mellitus and hepatitis C, but the ALJ explained that Plaintiff's reported symptoms were contradicted by all the evidence. For instance, records showed that Plaintiff was not treated for hepatitis C and received no treatment for diabetes from 2003 to 2005. Plaintiff also resumed substantial gainful activity beginning in 2005 and did not present any evidence that his symptoms worsened. Nor did Plaintiff support his blanket allegation of seizures because he failed to present sufficient evidence that he experienced seizures or that he had abnormal electroencephalogram tests.

The ALJ likewise rejected Plaintiff's exaggerated allegations of severe pain. Medical records indicated that Plaintiff never received treatment or medicine typically associated with severe pain. Plaintiff also reported to Dr. Cunningham that he had constant burning pain in

his feet, yet he also told Dr. Cunningham that he could even feel his feet and displayed an ability to walk and stand independently with a normal gait.

The ALJ further explained how Plaintiff overstated his vision problems, which the evidence did not indicate was serious. For instance, Plaintiff's corrected visual acuity was 20/40. Plaintiff also reported to an examining physician that he could see well enough to drive, and Plaintiff was observed driving his daughter to school without glasses. Therefore, the ALJ cited sufficient evidence of fraud with respect to both past and current alleged impairments to conclude, as the regulations permit, that Plaintiff had not been disabled since June 2002.

Plaintiff also contends the ALJ erred by not reviewing or allowing Plaintiff access to a surveillance video. The video apparently was attached to the investigative report that the ALJ relied upon to demonstrate Plaintiff's malingering. Plaintiff, however, has not provided evidence that he requested the video. Even if he had, Plaintiff presents no authority holding that the failure to provide access to a video breaches the ALJ's duty to create a full and fair record. Nor does Plaintiff explain why the video is important or how the record was not fully and fairly developed enough to find substantial evidence of fraud, particularly given that the ALJ and both parties had access to the investigative report itself.

Because the Court concludes that substantial evidence supports the ALJ's finding that fraud denies Plaintiff benefits, the Court need not address Plaintiff's remaining arguments relating to his degree of disability, physician testimony, and ability to work.[5]

/ / /

/ / /

/ / /

---

[5] Plaintiff cites other physicians who diagnosed Plaintiff with various impairments, but the ALJ explains that these diagnoses are unreliable given Plaintiff's malingering. As discussed above, substantial evidence supports the ALJ's finding that Plaintiff exaggerated his symptoms during medical examinations and to the Administration.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of the Court is directed to terminate this action.

DATED this 28th day of January, 2010.

_G. Murray Snow_
G. Murray Snow
United States District Judge